Good morning, Your Honors, and may it please the Court, I'd like to reserve two minutes for rebuttal if I could. I will keep an eye on the clock. This Court has set out a couple of very clear guiding principles for this analysis, and chief among them is the McTiernan case, which says that the fair and just standard should be liberally applied. So that's, I think, where I'm hoping the Court will be coming from in this analysis. Another phrasing that by a district court has been that the withdrawal of a plea should be freely allowed unless there's substantial prejudice to the Court or the government. Here, I think that analysis amounts to the question of whether or not there's been any kind of bad faith on the part of the defendant. For example, whether there's been any gamesmanship, whether the defendant was somehow trying to test the waters and see what his recommended sentence might be, and then reverse course, or as you have in some other cases, the defendant goes and tries to proffer, is found to be untruthful, can't get the benefit of safety valve, and then move to withdraw the plea. Yeah. To me, that's like the most analogous to this case. In here, you know, safety valve is not a right. You have to earn it, and you have to go through things. And here, it seems like he didn't want to go through that, and so that seems very much like someone going through the proffer, not being truthful, and the government doesn't move for the safety valve. Why is, what's the distinction? I think the distinction is the, is the good or bad faith distinction. If somebody goes to the proffer and lies, as you had in like the Piedra case, for example, that's a very clear case of bad faith. And I think to say that somebody who does that has a fair and just reason for withdrawing their plea. What if the person goes to the proffer and says, I just don't want to answer those questions? Doesn't lie. Well, and I think in a way, Your Honor is exactly right. This is a case in which somebody didn't safety valve. Correct. But not all such cases are created equal, would be the point that I make. In some of them, you have a bad reason, and in some of them, you have a fair and just reason. Right. And in this particular case, Mr. Hernandez gave a reason. That reason was, in effect, credited by the trials court. The trial court said, I don't doubt the sincerity of what And that, I think, is tremendously important because it is ultimately kind of a totality of the circumstances analysis. My point, though, you didn't answer my question. So if someone goes all the way to the proffer, you know, the AUSA asks these questions about who recruited you, who did this, and I'm just not going to answer that. I'm not going to answer that. I'm not going to answer that. At that point, should we say, okay, you're allowed to get out of your plea agreement? Not at that point. There's a further step, and that inquiry is why? Yes, because I don't want to rat out my compatriots. That's not good enough, I think, because there's no situation in which you could be properly advised of what it means to safety valve, then go to the safety valve and say, I'm not going to complete this because I don't want to give a full and accurate account of what I did in this offense. But what's the distinction here? Isn't that what your client is saying, too? My client is, no. My client is saying, I'm not going to go forward with the safety valve because this new information has arisen, and that new information, which would have affected my decision to end the plea, is that I'm going to be in danger as a result of this. When you talk about new reason, it can't just be a subjectively new reason. It has to be objectively new. That is, a reasonable person would have considered this to be a new reason, right? Well, that's an interesting question. I don't know if it has to be objective or subjective, but I think in this case, it's both, certainly. Think of this hypo, not a safety valve context, but someone who gets a sweetheart plea deal and he says he's going to testify against fellow Mafia gang members, but say he's a very naive person and thought this was just a win-win deal, and then later on, someone tells him, you may be in trouble, and he goes through Google and researches and says, oh no, you know what, I'm going to be in trouble, in prison, or there may be retaliation. That technically may be a new reason, and maybe genuinely, in good faith, he'd believe that, but that wouldn't be a fair and just reason to withdraw it, right? I think the question would be, under those circumstances, did this person, did that hypothetical defendant know in advance that that was a reasonable possibility? I think anything from objectively, and I think objectively, even if he didn't know, in good faith, a reasonable person in his position would know that if you cut a plea deal, some of your compatriots may not be happy. I think a reasonable person would know that, yes, but now, as we discussed it, I think it is clear the fair and just reason has to be, certainly, there has to be a good faith basis, and good faith is always going to be a subjective quality, so you would have to look at that particular set of circumstances, and this court has said that the analysis of whether or not you're going to allow somebody to withdraw the plea is always a fact-specific one to that set of circumstances. And here, I mean, isn't it pretty obvious if you were going to cooperate with the government, then you may have some blowback from either your compatriots or it will be viewed negatively in prison? Well, Mr. Hernandez took the position that he didn't know that previously, and again, that was credited by the trial court, and he had never previously been in federal custody. But I mean, objectively, I mean, this is even in the elementary schoolyard, people don't like tattletales, right? I mean, this is just something you grow up, that's part of the thing, you know, you may face retaliation. It seems pretty obvious that he should have known this. I don't think it's that obvious. I mean, first of all, the trial court actually asked the question of counsel at the hearing, do we know for a fact that it's dangerous? Is there any truth to this notion that it's dangerous? So arguably, a district court judge who was previously a prosecutor for many years asking that question suggests that it's not entirely clear. And these proffers are done under seal, obviously, and the plea agreements were entered under seal. Let me ask you, isn't the distinction in this case that his own attorney told him that his proffer would not be viewed as cooperation by other inmates, other federal inmates? His attorney didn't advise him as to that fact specifically, I don't believe. His attorney didn't say, oh, don't worry, you've got nothing to worry about, this won't be. So what was the basis for his belief that a proffer was different than cooperation? I don't know, and that's not in the record, that's not part of his declaration. His declaration simply says that he was planning on proffering, that he had expected to do so, that was part of the reason he entered the plea agreement, and he subsequently found out that proffering would be treated like cooperation. I don't know that there's any indication that he had an understanding of the two things as distinct before, but the upshot is there's a danger, whether it's because it's like cooperation or for some other reason. So given that Judge Barat credited his rationale, what's the explanation for Judge Barat not considering that a fair and just reason? Well, I think the judge gave two bases, and I think they were both essentially a rise to an application of the wrong standard. First, if you look at what the court said, the court said, what's the point of this, a couple of times. And so I think the court was asking, in effect, for some sort of second prong, showing a prejudice, like you're just going to wind up in the same place, you know, you're either going to have to plead to the same count, or you're going to be convicted of it. Is that wrong? I thought our precedent said that you could analyze whether or not the reason would have shown that there was a reasonable probability that he would not have pled guilty or not gone to trial. So isn't that the same thing that Judge Barat was asking? No, I don't think that is the same thing. Why not? I would say because to ask the question, is there a reasonable probability that the defendant is going to take some different course of action? I mean, that's not an unreasonable question. But what this judge was saying was, this is futile, because you're going to wind up in exactly the same place. You're going to do the same thing. Right. Well... Is that the same question? No, because if you go to trial, for example, you may or may not be convicted. The trial court can't speculate as to whether or not this defendant... But I think he was saying that there's no reasonable probability that he would have gone to trial. I didn't understand that to be the case. I mean, he didn't use those exact words, but it's the same gist, right? I don't agree. I think that my reading of that was, you're going to be convicted one way or the other. You're going to wind up with this conviction, and that includes the possibility of going to trial. And from our position is that that was essentially passing on his probability of success at trial, which is another way of saying, you're guilty, you're going to lose, this is all a waste of time. What was his second reason? His second reason was that it was also like another prong, it was like, you can avoid the threat of proffering by just not proffering. So you don't need to withdraw your plea, you can just not proffer and then problem solved kind of thing. But again, there's certainly nothing in the case law that says, if you can't solve your problem, in order to withdraw your plea, you have to be able to not solve this threat by any other means or something like that. I think it was going this extra step, making this extra prong that the defendant had to satisfy improperly. Can I ask one question? What's your limiting principle on what types of new information is a fair and just reason? Well, that principle has been announced by this court, which is pretty much any circumstances that bears on, that amounts to what's fair and just. So I don't think anything, not any, anything that's fair and just, I know it's a terribly, like, I mean, the hypothetical is like, say his grandmother told him, you know, after he please guilty, you shouldn't proffer, and I'm worried about your safety. Is that a fair and just reason? I don't know. It's not the reason that was given here. I know, but I'm just trying to see what the limits of this are. It just seems like anything could be a fair and just reason. Wouldn't a reasonable objective perspective be a good limiting principle? Well, I think the question of what's fair and just is an objective standard. I think it is an objective standard. It's very similar to this reasonable person standard in a tort, for example. What is reasonable behavior under the circumstances? What's fair and just here? If your grandmother turned around and gave her opinion that you probably shouldn't have a fair and just, it's not the case here, so I'm not worried about saying that, but I don't think you have to. How about if he says, well, I just learned that I'm going to lose my right to vote, and, you know, voting is very important for me. Would that be a fair and just reason? Not in a situation like this one, where, as in most cases, the plea agreement specifically says you're going to lose your right to vote. So I don't think you could turn around and say that's a new piece of information in any federal plea policy. Well, Mr. Brody, when I asked you about what his attorney told him, in his declaration in paragraph six, he says, Mr. Navarro, his attorney, prior attorney, explained to me that a safety valve propper is not the same as cooperating with the government and that I would only be required to disclose my own personal role in the offense. So, he says he didn't, seven says he didn't plan to act as an informant on other defendants. So, isn't that tantamount to his attorney advising him that he would not be in the same place as a person who was cooperating? Well, it's certainly advising him as to the difference between the two. I don't know that there's any express statement of, don't worry about it, there's not going to be any blowback here. But I think it's an interesting point, Your Honor, because it does illustrate that there is some perceived distinction between proffering and cooperating and that that perceived distinction sort of collapsed for my client when he was, in fact, in prison on the ground with people who really know whether or not that's the case and, frankly, their advice and their expertise. But, in any case, I don't think that ultimately changes the analysis. Okay. Thank you. We will hear from Mr. Roach. Thank you, Your Honor. Good morning, Your Honors. Andrew Roach on behalf of Pelley United States. Your Honors, the District Court did not abuse its discretion when it considered the facts of this case and looked at defendant's reason for withdrawing his plea and denied defendant's withdrawal of his plea in this case. The defendant, in this case, proffered some generalized reasons of a little bit of vague fear and that he didn't understand what safety valve would entail. But at the time he pled, at the time he entered these pleas, which he sought to withdraw, he was expressly advised that he might not qualify for safety valve, safety valve could not be determined, and that if his sentence was higher than what he expected, he would not be allowed to withdraw his plea. Knowing all that and being advised of all that, he entered two pleas. Counsel, there's no dispute his plea was voluntary. The issue is, was it based on a misunderstanding as to what a proffer was based on the advice of his counsel and if it was different or viewed as different by his, the federal inmates with whom he'd be housed once he went to prison? Yes, Your Honor. And to be clear, defendant doesn't say that he got bad advice from his attorney. I know his declaration. He doesn't say bad advice, but he says I, he said it was different than cooperation. That's what he says. Right. And the District Court Judge Baratt credited that. So the question I really have is for you to respond to the arguments that did Judge Baratt, who's a wonderful judge and really, you know, he knows what he's doing, but did he somehow make a higher hurdle for this defendant because, in essence, his view of his guilt or the futility of allowing him to change? I mean, maybe should his analysis have just stopped at fair and just reason that plausibly motivated his earlier plea that was not correct? Your Honor, I think the judge considered what he was saying, but the judge found that his reason, his proper reason of not understanding the difference fell short of a fair and just reason. And it wasn't great enough. He did not show enough to meet his burden. Well, what else should he have had to show? I think in this case, and I think to respect what some of, what Judge Lee and Judge Bumate was saying is... I perfectly understand what Judge Lee and Judge Bumate are saying. Well, I think... My question to you is did he impose an additional hurdle? No, Your Honor. Okay. But he did in that he said he imposed this futility requirement, and then he said, well, you're going to be convicted either way. I don't think he imposed a futility requirement here. I think the judge's questions were fairly at trying to understand the underpinnings of defendant's fear. And so the judge brought, began the hearing by asking defense counsel, is this real? Do people actually view safety valve cooperation as the same as cooperating? And the response he got from defense counsel was, well, it depends. Sometimes I hear one thing. Sometimes I hear another thing. So in that case, the judge was trying to struggle to figure out what this actual fear was and whether it was a reasonable fear and whether it then met the standard of fair and just. And the questions he asked were trying to understand really the basis of the fear and what would happen. And I think it was fair for the judge to ask those questions to really understand what basis it was and whether that met a fair and just standard. And I think the reason why I'm asking that is I know the case law always talks about that motions to withdraw on Rule 11 should be read liberally and freely, but there has to be some limiting principle. How do we, how should we interpret our court? And McTiernan said interpret a Rule 32 fair and just to include any new reason not known at the time of plea. So we have to grapple with that. And that seems pretty broad. So why doesn't that fit here? I think McTiernan, Garcia, and Bonilla, they deal with more of new evidence or legal advice. And they talk about that. And if you look at the other stream of cases where it's defendant really wants to withdraw because he's facing a higher sentence. And in a lot of cases, if you look at those, there's a multitude of unknown things that a defendant is never really going to know. Right, but here he didn't know for sure that he was facing, I mean, the PSR hadn't been done, so he didn't know what the sentence was going to be. I mean, it's not unlike, it's distinguishable on, you know, at the point in time when he came up with this fear or was told that he would be deemed to be cooperating. It was before anything about the sentence was known. Well, Your Honor, actually at the time he pled, a pre-plea report on his criminal history had already been done. A pre-plea. Yeah. And now, and straighten me out on this. So he pled in front of Judge Phillips? Correct, Your Honor. Okay, so she's the one who walked through the whole colloquy with him. How did it end up with Judge Baratt? Your Honor, I do not know how it ended up before Judge Baratt. It was just ordered, the court issued a minute order to direct it to Judge Baratt. Seems like it should have gone to Judge Phillips, you know, the original plea taker. But to further answer the court's, Judge Wardlaw's question, at the time he pled, a pre-plea report had been done, he knew the guidelines, and he knew he was in criminal history category five. So, he knew at the time he was pled, he was facing a very significant sentence, and he knew and was told that, you know, safety valve eligibility will have to be determined at a later date. And so I think in that consideration... Wasn't he facing a mandatory minimum of ten years? Yes, Your Honor. And that's why you do the safety valve determination to see if he can escape the mandatory minimum. Yes, Your Honor. And so I think the Judge Baratt in asking these questions then, it was perfectly reasonable for him to ask these questions to exercise his discretion. And I certainly believe that, you know, I think it could very well be a different case if defendant proffered additional reasons that were, that the court could have found were fair and just. But here on this record, on this vague generalized record of vagueness of fear that he didn't understand, it was not enough. Can I ask you... It wasn't his discretion. Can you give us what you think is the limiting principle for any other reason, you know, any other reason pronged? You're right. In McTiernan, I think the issue was that he found out he could file a suppression motion. So, you know, any other reason related to the quantum of proof? That seems like a good limiting principle. You know, have you thought about that? I think the limiting principle is, I think, articulated well in Briggs, which is extraordinary circumstances. And, you know, so a defendant is not allowed to withdraw his plea because he faces a higher than anticipated sentence except in extraordinary circumstances. And I think the extraordinary circumstances there is a good limiting principle because it gives the district court enough discretion to decide which cases are extraordinary circumstances. But it still reflects the policy behind Rule 11, and that there is supposed to be some finality with pleas. And defendants shouldn't just simply withdraw on a lark, because otherwise there's always going to be something. The district court judge Barat said he didn't think he was withdrawing on a lark. Correct. So he made a finding as to that. He made a finding, but he still found that this perception of fear was not enough to be fair and just. And so it really didn't rise to what I would consider what this court's case is, just extraordinary circumstances. Maybe if there were different situations and defendant had come in and was able to identify or was attacked because of cooperation, that could have been a rise to an extraordinary circumstance. What do you do with McTernan's language or any other reason for withdrawing the plea that did not exist when the defendant entered his plea? They're not saying extraordinary circumstances. They're not, Your Honor, but if that language is read literally, then there really is no limiting principle. That's the limiting principle. Did the reason exist at the time? So the way I look at this case is, did this reason exist at the time he was sentenced? And that's the issue I'm grappling with because if it exists at all, it existed at the time of his sentence. What didn't exist is whether or not he knew about it. So then we go to, is it a subjective versus an objective test? Well, Your Honor, going back to what, I think it's what reason existed at the time he pled. And I understand he is saying he didn't know this specific reason. He didn't have this specific knowledge. But the overarching principle was at the time he pled, there was always the reason, he always knew, he might get a higher sentence than he expected. For innumerable unknown reasons. And he always knew he might not get safety valve. So if that's the case, then I would say at the time he pled, the reason and the potential that he would receive a higher sentence always existed. Can I ask, it's been my experience, and let me know if you think this is still true, that usually you don't have the pre-plea criminal history report. And so they plead and then comes, you know, and you think going into the plea that the person might be safety valve eligible, criminal history report comes back and it turns out he's got more criminal history points and that he is not safety valve eligible. Does that frequently still happen? It's changing less now in light of Lopez, Your Honor, but before Lopez, many times they would get the pre-plea to understand where their criminal history category would be. But the point being, there's often been cases where defendants find out after the plea that their criminal history then takes them out of safety valve eligibility. Yes, Your Honor. And if we were to adopt this any reason, any new reason standard, then all those people can withdraw their plea. Yes, Your Honor. And then there's really no limiting principle to it. Right. And Your Honors, at the end of the day, even though this court, while sitting this drug, might have decided differently, ultimately coming back to the easy question here, was it an abuse of discretion for Judge Barat to find that this did not constitute an unfair and just reason? It was not an abuse of discretion and this court can only reverse unless it finds that Judge Barat committed a clear error in judgment based upon the facts presented with him. And with that, we believe the district court's decision denying defendants' motion to withdraw should be affirmed. Thank you, Your Honor. Thank you, counsel. Mr. Brody, I'll give you a minute for rebuttal. I guess I'll run through it pretty quickly. On the question of whether or not the threat is real, and the district court did ask about that, and trial counsel, which was me by the way, did not have the quickest and best answer. But the best answer is that this court has said in Salazar that the threat to one's safety in proffering is real. In fact, the government quoted that case in their brief. So there's no question that it's a real threat. What I want to emphasize to the court is this can really be a narrow holding. This is a set of extraordinary circumstances. In fact, how often are these factors going to recur? The defendant is in fact safety valve eligible. The recommendation from the probation officer was the lowest possible sentence to which he would be legally entitled. And that was what the PSR came back with. He knew in advance what his criminal history category was going to be. And then in spite of being safety valve eligible, chooses not to proffer. That's an unusual set of circumstances. And I think it goes to this concern that if the standard is so broad, there's going to be a run on the courts. Anybody with any reason might just jump in. But Your Honor, the example that you gave of somebody finding out that they're not. Yeah, does that still happen? Yes. Okay. It does. And that wouldn't be an adequate reason. Yeah, why not? What's the distinction? Because the plea agreement, every federal plea agreement that I've ever seen in multiple districts, expressly says that your criminal history score has not yet been determined and may change and may or may, you know, will affect the outcome of your sentence. But that's the same. He got the same warnings here. He may or may not get eligibility for safety valve. So it seems the warning can't be enough. I think a warning could potentially be enough because if Mr. Hernandez had been told expressly, you know, it's entirely possible that you may be at risk. This could be a very serious danger to you and your family if you go forward and proffer. I think that wouldn't, I would concede that would make it very difficult for him after the fact to withdraw his plea on that basis. But that isn't what happened here. I think you can always look at the totality of the circumstances and say, is this a fair and just reason? I don't think holding for Mr. Hernandez would blow this thing wide up. I think it would be very narrow holding specific to the facts here and very specific to the trial courts, finding that he was acting in good faith, that he wasn't doing it on a lark, and that he was, that his reasons were honest. Thank you. Thank you very much, counsel. U.S. v. Hernandez will be submitted.
judges: WARDLAW, LEE, BUMATAY